# In the United States Court of Federal Claims

No. 21-928V

(Filed Under Seal: May 5, 2023)
(Reissued for Publication: May 23, 2023)

|  |  |  |
|---|---|---|
| **CARISSA FETTERS, on behalf of her Minor Child, S.F.,** | ) ) ) | |
| Petitioner, | ) ) | Vaccine case; challenge to denial of attorneys' fees and costs; petitioner's unavailing motion to disqualify Chief Special Master |
| v. | ) ) ) | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) | |
| Respondent. | ) ) | |

Andrew D. Downing, Downing, Allison & Jorgenson, Phoenix, AZ, for petitioner.

Voris E. Johnson, Jr., Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States. With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, as well as C. Salvatore D'Alessio, Director, Heather L. Pearlman, Deputy Director, and Darryl R. Wishard, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Senior Judge.

Carissa Fetters, acting on behalf of her minor child, S.F., requests that this court review the Chief Special Master's decision denying her motion for attorneys' fees and costs. Pet'r's Mot. for Review, ECF No. 34; Pet'r's Mem. of Objs. in Supp. of Mot. for Rev. ("Pet'r's Rev. Mem."), ECF No. 35. Ms. Fetters filed a petition with the Office of the Special Masters on February 16, 2021, seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program" or "the Program"). Pet., ECF No. 1. The petition alleged that S.F. had "suffered an adverse reaction to a Gardasil vaccination administered on March 15, 2019." *Id.* Ms. Fetters voluntarily withdrew her petition 240 days later to seek compensation in

---

[1] In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B ("Vaccine Rules"), Rule 18(b), this opinion and order is being initially filed under seal. By rule, the parties have fourteen days within which to propose redactions.

a different forum and subsequently moved for attorneys' fees and costs. *See* Notice to Withdraw Pet., ECF No. 18; Pet'r's Mot. for Final Att'ys' Fees & Costs, ECF No. 21. The Chief Special Master refused to award fees and costs because petitioner had failed to establish that her claim had a reasonable basis. Order of Feb. 9, 2023, ECF No. 33. Specifically, the Chief Special Master found Ms. Fetters provided insufficient evidence that S.F. had received the Gardasil vaccine. *Id.* at 3.

Petitioner has also moved to disqualify the Chief Special Master, alleging that his rulings in this case and others involving Gardasil claims either demonstrate actual bias toward these claims or create the objective appearance of such bias. Pet'r's Mot. for Disqualification ("Pet'r's Disqualification Mot.") at 9-10, ECF No. 38.

## BACKGROUND

### A.    *Exhausting remedies under the Vaccine Program in Gardasil cases*

Petitioner is one of "hundreds, possibly thousands" of people seeking compensation for injuries allegedly caused by Gardasil, a vaccine used to prevent certain strains of the human papillomavirus ("HPV"). *See* Pet'r's Disqualification Mot. Ex. B, at 5. These individuals sought to bring multidistrict litigation against Merck but could not do so before exhausting their administrative remedies through the Vaccine Program. *See* 42 U.S.C. § 300aa-11(a)(2)(A). A petitioner can exhaust his or her claims by obtaining a final judgment or by opting out of the Vaccine Program before such a judgment is entered. 42 U.S.C. § 300aa-21(a)-(b).

Given the expected volume of Gardasil petitions, before filing Ms. Fetters' and others' claims, petitioner's counsel contacted the Office of the Special Masters to "discuss some sort of process that will streamline the filing and opt out process." Pet'r's Disqualification Mot. Ex. B, at 5. Specifically, petitioner's counsel proposed that the court allow Gardasil petitioners seeking to join a multidistrict litigation ("Gardasil MDL petitioners") to file a short form petition and waive their obligation to file medical records and affidavits as well as the government's obligation to file a preliminary response. *Id.* at 3; *see* Vaccine Rule 2(c); Vaccine Rule 4. This procedure would allow Gardasil MDL petitioners to exhaust their Vaccine Program remedies expeditiously and "without requiring a ton of effort from the [c]ourt or anyone else." Pet'r's Disqualification Mot. Ex. B, at 3.

In response, the Special Masters' Office explained that it "does not endorse this use of the [Vaccine] Program" but would "abide by the [Vaccine] Act's requirement[s]" by permitting "petitioners to exit the Program at various points in the litigation, and then pursue their claim elsewhere." Pet'r's Disqualification Mot. Ex. B, at 4. The Chief Special Master also specified that "requests for fees and costs in these matters will be reviewed in light of the present circumstances," namely the Chief Special Master "will not expect . . . cases filed simply to check off the 'Vaccine Program' box [to] require significant attorney time." *Id.* The Special Masters' Office did not adopt the process that petitioner's counsel proposed. *See* Pre-Assignment Review - Initial Order at 1-3, ECF No. 5 (requiring petitioner to file supporting documents pursuant to Vaccine Rule 2 but suspending the government's deadline for filing a Rule 4 report).

Petitioner has moved for disqualification because of statements the Chief Special Master has made in other Gardasil cases pending before him. Specifically, in an order granting attorneys' fees and costs, the Chief Special Master explained his decision to nonetheless reduce the "overall *magnitude* of the award." *Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757, at *13 (Fed. Cl. Spec. Mstr. Oct. 18, 2022). He explained that "petitioners may legitimately pass through the Program en route to the 'promised land' of another forum," but that he is "not compelled by the Act to turn a blind eye to this stratagem." *Id.* He indicated he would reduce fee awards based on this strategy and the likelihood that "this claim, as well as the other comparable claims being dismissed, would have resulted in an unfavorable determination *had it been litigated fully in the Vaccine Program.*" *Id.* Additionally, because the Chief Special Master credited the time it took petitioner's attorney "to develop the standardized legal arguments in his numerous fees motions," the time for drafting such motions "with the established templates in subsequent cases should only be billed as paralegal time." *Id.* at *12. While petitioner's counsel did not appeal the Chief Special Master's decision to reduce the fee award in *Atjian*, he has since challenged the Chief Special Master's treatment of fee motions filed by other Gardasil MDL petitioners.

Over the past few years, petitioner's counsel has filed over 100 cases for Gardasil MDL petitioners. *See* Pet'r's Reply in Supp. of the Mot. for Disqualification ("Pet'r's Disqualification Reply") Ex. A, at 1, ECF No. 41-1; *see also* Resp't's Resp. to Pet'r's Mot. for Disqualification ("Resp't's Disqualification Resp.") at 1, ECF No. 39 ("This is one of roughly 240 cases filed by petitioner's counsel . . . for the sole purpose of pursuing multidistrict litigation against the manufacturer of the Gardasil vaccine."). Petitioner's counsel has moved to disqualify the Chief Special Master in "at least 55" of these cases before him. Pet'r's Disqualification Reply Ex. A, at 1. Attorney's fees applications are pending "*in over one hundred Gardasil cases.*" *Id.* at 3. In this case and two others, petitioner's counsel has filed a motion for review of the denial of fees and costs concurrently with a motion to disqualify the Chief Special Master.[2]

The Chief Special Master anticipated petitioner's counsel would file additional disqualification motions and recognized that having such motions before multiple judges on this court creates the risk of inconsistent judgments. Pet'r's Disqualification Reply Ex. A, at 1-2. Finding that "[t]he current situation involving [petitioner's] attorney [has become] untenable," the Chief Special Master stayed all matters "involving present counsel and allegations of HPV vaccine injuries" until the Court of Federal Claims ruled on the three pending disqualification motions before it. *Id.* at 2. At that point the Chief Special Master advised that he will lift the stay and establish "a more manageable process for resolving these matters." *Id.*

### B.   *Proceedings before the Chief Special Master in this case*

---

[2] *See* Pet'r's Mot. for Review, *Stratton v. Sec'y of Health & Hum. Servs.*, No. 20-1515V (Fed. Cl. Mar. 8, 2023), ECF No. 39; Pet'r's Mot. for Disqualification, *Stratton*, No. 20-1515V (Mar. 20, 2023), ECF No. 47; Pet'r's Mot. for Rev., *Levy ex rel. J.L. v. Sec'y of Health & Hum. Servs.*, No. 20-1791V (Fed. Cl. Mar. 9, 2023), ECF No. 29; Pet'r's Mot. for Disqualification, *Levy ex rel. J.L.*, No. 20-1791V (Mar. 20, 2023), ECF No. 33.

Ms. Fetters was one of the first thirteen Gardasil MDL petitioners to exhaust her administrative remedies. Pet'r's Disqualification Mot. Ex. A, at 1, 2-5. Ms. Fetters filed the petition on behalf of S.F. on February 16, 2021, then filed eight successive motions to extend the deadline to file supporting medical records required under the Vaccine Rules. Pet.; Vaccine Rule 2(c); *Fetters ex rel. S.F. v. Sec'y Health & Hum. Servs.*, No. 1:21-cv-928V, ECF Nos. 7-8, 10-14, 16 (motions for extensions of time). This prevented the Chief Special Master from ruling on her petition within the 240-day statutory period. 42 U.S.C. § 300aa-12(g)(1). Ms. Fetters then withdrew her petition, filed a complaint in the Central District of California, and eventually joined the multidistrict litigation. *See* Notice to Withdraw Pet.; Pet'r's Rev. Mem. Ex. A, at 5-6; *see also In Re: Gardasil Prods. Liab. Litig.*, Case No. 3:22-md-03036-RJC (W.D.N.C 2022).

After the Chief Special Master concluded proceedings, petitioner moved for a final award of attorneys' fees and costs. *See* Pet'r's Mot. for Final Att'ys' Fees and Costs at 1. "[T]he special master or court may award" a non-prevailing petitioner such costs only if she demonstrates the petition was "brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1).

The petition claims S.F. "suffered an adverse reaction to the Gardasil vaccination administered on March 15, 2019." Pet. at 1. Petitioner supported her claim with affidavit testimony and various medical records. In her affidavit, dated October 8, 2020, Ms. Fetters testifies that S.F. was given the Gardasil shot on March 15, 2019, and that she traced her daughter's behavioral changes and symptoms back to this date during two medical appointments later that Spring: once on April 26 when S.F. had a panic attack and again on May 14 when S.F. entered a "fit of rage" and attempted to harm herself. Statement of Ms. Fetters, Oct. 8, 2020, ¶¶ 3, 7-8, ECF No. 6-1. Additionally, Ms. Fetters stated during a doctor's appointment on May 23, 2019, that her daughter's symptoms "started right after she received the HPV shot in early March." Notice of Filing Medical Rs. ("Medical Rs.") Ex. 4, at 21, ECF No. 6-4. Ms. Fetters made similar statements on another medical intake form. Medical Rs. Ex. 6, at 3, ECF No. 6-6 ("I have felt the vaccine started her string of issues back in April 2019 (vaccine was mid-March 2019)."). Ms. Fetters also emailed a doctor on February 25, 2020, inquiring about treatment options and indicating she had been "looking more into [S.F.'s] HPV vaccine back in March that has [led] to all of these issues since." Medical Rs. Ex. 4, at 24.

The Chief Special Master denied petitioner's request for attorneys' fees and costs because although petitioner's claim was brought in good faith, she had failed to demonstrate it had a reasonable basis. Order of Feb. 9, 2023. Specifically, the Chief Special Master found petitioner had failed to establish S.F. received a vaccine listed on the Vaccine Injury Table because "[p]etitioner did not file . . . the vaccination record" and none of the medical records she filed "contain[ed] an administration record." *Id.* at 3. Moreover, petitioner did not file an affidavit "detailing [her] efforts to obtain the vaccination record and the reasons for its unavailability." *Id.*; *see also* 42 U.S.C. § 300aa-11(c)(3).

Petitioner filed a motion to review the Chief Special Master's decision on March 9, 2023, contending that the Chief Special Master committed error by failing to consider sworn testimony and certain medical records. Pet'r's Rev. Mem. at 10. Petitioner requests that this court either reverse the Chief Special Master's decision and award her attorneys' fees and costs or remand

the case for further proceedings. *Id.* at 10-11. The government responded on April 10, 2023, defending the Chief Special Master's denial. Resp't's Resp. to Pet'r's Mot. for Review ("Resp't's Rev. Resp."), ECF No. 40.

On March 20, 2023, petitioner filed a motion to disqualify the Chief Special Master. Petitioner contends the Chief Special Master must recuse himself because he has a "bias towards Gardasil cases." *See* Pet'r's Disqualification Mot. at 3. The government filed its response on April 3, 2023, Resp't's Disqualification Resp., and petitioner has filed her reply, Pet'r's Disqualification Reply.

Both motions are fully briefed and ready for disposition.

## STANDARDS OF REVIEW

### A.   *Review of a special master's decision whether to award attorneys' fees*

This court reviews a special master's decision whether to award attorneys' fees and costs under the abuse of discretion standard. *See Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 700 (2016). A special master's decision constitutes an abuse of discretion if it is "(1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based his decision." *Murphy v. Sec'y of Dep't of Health & Hum. Servs.*, 30 Fed. Cl. 60, 61 (1993) (quoting *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995).

"If the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision,' then reversible error is 'extremely difficult to demonstrate.'" *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). Under this standard, a reviewing court "do[es] not reweigh the factual evidence, [or] assess whether the special master correctly evaluated the evidence." *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *see also Thatcher v. Sec'y of Health & Hum. Servs.*, No. 17-1628V, 2021 WL 4287353, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2021) ("[T]he ultimate weighing of such evidence is left up to the special master."). A special master may "rely on his or her own experiences within the Vaccine Program when awarding reasonable attorneys' fees and costs." *Raymo*, 129 Fed. Cl. at 701.

### B.   *Challenges to a special master's qualifications*

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. This standard applies to special masters as well as judges. It is objective and turns on whether "a reasonable person, knowing all the facts, would question the judge's impartiality." *Allphin v. United States*, 758 F.3d 1336, 1344 (Fed. Cir. 2014) (quoting *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1568 (Fed. Cir. 1989)). A judge is presumed to be impartial, and the movant bears a "heavy burden" of proving

otherwise. *See Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 557 (Fed. Cir. 1996).

Generally, "judicial rulings, routine trial administration efforts, and ordinary admonishments" to counsel are not grounds for recusal. *Liteky v. United States*, 510 U.S. 540, 556 (1994); *see also Allen v. United States*, No. 13-642C, 2014 WL 3505585, at *3 (Fed. Cl. July 15, 2014) ("[D]isagree[ment] with the court's case management approach . . . is not grounds for recusal.").

## ANALYSIS

The National Childhood Vaccine Injury Act of 1986 ("Vaccine Act") sought to establish a forum amenable to vaccine manufacturers and plaintiffs bringing vaccine injury claims alike. 42 U.S.C. §§ 300aa-1 to aa-34. In the 1980s vaccine-related tort litigation was on the rise and vaccination rates were dropping as "the public became much less alarmed at the threat of . . . diseases, and much more concerned with the risk of injury from the vaccines themselves." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226 (2011). Many voiced concerns that "obtaining compensation for legitimate vaccine-inflicted injuries was too costly and difficult." *Id.* at 227. To address these problems, Congress established the Vaccine Program, "a no-fault compensation program 'designed to work faster and with greater ease than the civil tort system.'" *Id.* at 228 (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269 (1995)).

In exchange for easing claimants' path to expeditious relief, to be "paid out of a fund created by an excise tax on each vaccine dose," the Vaccine Act provides vaccine manufacturers "significant tort-liability protections." *Bruesewitz*, 562 U.S. at 229. In an effort "to ensure that petitioners could obtain qualified assistance," Congress mandated attorneys' fee awards for successful petitioners and gave special masters discretion to award fees to unsuccessful petitioners, so long as their claim was brought in good faith and had a reasonable basis. *Browning v. Sec'y of Health & Hum. Servs.*, No. 02-929V, 2010 WL 3943556, at *4 (Fed. Cl. Spec. Mstr. Sept. 27, 2010); 42 U.S.C. § 300aa-15(e). Petitioners claiming over $1,000 or "an unspecified amount" must first exhaust their claim in the program, 42 U.S.C. § 300aa-11(a)(2)(A), but can do so before a final judgment is entered by withdrawing their petition after it has been pending for 240 days. 42 U.S.C. § 300aa-21(b).

Ms. Fetters has availed herself of the Act's provision allowing petitioners to withdraw their claim and file it elsewhere. She now challenges the Chief Special Master's finding that her claim lacked a reasonable basis and his denial of her motion for attorneys' fees. Ms. Fetters also alleges the Chief Special Master's handling of Gardasil cases exhibits apparent or actual bias and moves for his disqualification.

### A.    *The Chief Special Master's denial of attorneys' fees*

The Chief Special Master's denial of attorneys' fees and costs was based on his finding that the petitioner failed to establish a reasonable basis for her claim. To establish a reasonable basis for a vaccine injury claim, a petitioner must show her injury was "caused by [the] vaccine." *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1341 (Fed. Cir. 2010). For

vaccines included in the Vaccine Injury Table, like Gardasil, *see* 42 C.F.R. § 100.3(a) Category XVI, a petitioner may establish causation by showing the vaccine was administered and the recipient suffered a covered injury "in association with [the] vaccine" within the covered time period listed in the table. *Broekelschen*, 618 F.3d at 1341-42; *see* 42 U.S.C. § 300aa-11(c)(1)(C). If the injury is not covered or the covered injury was suffered outside the covered time period a petitioner may establish causation "by proving causation in fact." *See Broekelschen*, 618 F.3d at 1341-42; *Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010). If medical records documenting the vaccine's administration are not submitted, "the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2).

A petitioner requesting fees must establish a reasonable basis by "more than a mere scintilla but less than a preponderance of proof." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020). "[A] reasonable basis can only be established with objective evidence." *Id.* at 1344. For instance, taken together, medical records that show the petitioner suffered certain injuries and a vaccine package insert identifying the same injuries as adverse reactions can constitute "circumstantial, objective evidence." *Id.* at 1346. A petitioner's affidavit can also constitute objective evidence when taken together with medical records and vaccine package inserts. *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380-81 (Fed. Cir. 2021). In contrast, "two conclusory statements of a medical expert" are not enough on their own to establish a reasonable basis. *Thatcher*, 2021 WL 4287353, at *2.

Here, the Chief Special Master found Ms. Fetters failed to demonstrate her claim had a reasonable basis. Order of February 9, 2023, at 3. His decision explains that petitioner submitted neither a medical record establishing S.F. had received the vaccine nor an affidavit reciting her efforts to locate these records and the reason for their unavailability. *Id.*

Petitioner contends the Chief Special Master abused his discretion in finding she failed to establish a reasonable basis. Pet'r's Rev. Mem. at 3-4. Specifically, petitioner contends the Chief Special Master erred by "fail[ing] to consider the affidavit testimony of Ms. Carissa Fetters" and by "ignoring medical records as evidence in support of [p]etitioner's reasonable basis claim." *Id.* at 4.

The government responds that the Chief Special Master "correctly applied the law to the evidence, he articulated rational reasons for his findings, and he properly exercised his discretion in denying an award of fees and costs." Resp't's Rev. Resp. at 2. It maintains the Chief Special Master's denial of fees was reasonable because the petitioner provided neither vaccination records nor an affidavit explaining why such documents could not be submitted. *Id.* at 12-13. Next, the government argues petitioner's statements contained in post-vaccination medical records are unavailing because, while the statements "provide[] a date for the alleged

vaccination," they offer "no other information about the circumstances of the alleged vaccination, including where it was administered or who administered it." *Id.* at 14.[3]

Ms. Fetters' affidavit testimony tracing her daughter's behavioral changes and symptoms back to a March 15, 2019, Gardasil shot, Statement of Ms. Fetters ¶¶ 3, 7-8, Oct. 8, 2020, provides some evidence suggesting S.F. received the Gardasil vaccination. Nevertheless, the Chief Special Master possesses the discretion to weigh this evidence relative to the entire record before him. Overall, that record provides a rational basis for his determination that Ms. Fetters offered no circumstantial evidence that, considered with her affidavit, constitutes objective evidence that S.F. received the vaccine. The medical records that petitioner relies upon reflect statements that were either made by Ms. Fetters or recite, without affirmatively adopting or otherwise confirming, Ms. Fetters' assertion that S.F. received the vaccine. The May 23, 2019, doctor's notes indicate in the subjective section that "Mom said [S.F.'s] symptoms all started right after she received the HPV shot in early March," and the vaccine is mentioned in neither the "objective," "assessment," nor "plan" sections of the doctor's notes. Medical Rs. Ex. 4, at 20-22. Next, the doctor's statement recommending chelation or a "Detox Qube" responds to Ms. Fetters' statement that S.F. received the vaccine in March and suspects the vaccine "[led] to all the issues since" and her inquiry about whether such treatments were something the doctor would suggest or help provide to S.F. *Id.* at 24. That doctor also does not aver that the vaccine was administered. *Id.* Ms. Fetters finally cites her own report that she "felt the vaccine started [S.F.'s] string of issues back in April 2019 (vaccine was mid-March)" as evidence of administration. Medical Rs. Ex. 6, at 3. But this statement was made by Ms. Fetters in response to the doctor's question, "What is the main reason for your visit to me?" *Id.* While these statements were made in medical records, all statements regarding whether S.F. received the vaccine were made by Ms. Fetters.

The Chief Special Master considered this circumstantial evidence and did not err by assigning it little evidentiary weight. In explaining his finding that petitioner's claim lacked a reasonable basis, the Chief Special Master focused on Ms. Fetters' failure to provide a package insert, a vaccine administration record, or an affidavit explaining why the vaccine record could not be located, along with her failure to address this failure of proof when the government objected to her fees request on that basis. Order of Feb. 9, 2023, at 3. The Chief Special Master did not abuse his discretion in determining Ms. Fetters failed to establish her claim had a reasonable basis and denying her request for attorneys' fees on that basis.

### B.   Disqualification

In petitioner's motion for disqualification, she contends that the Chief Special Master has exhibited bias against Gardasil MDL petitioners by (1) "disregard[ing] peer-reviewed, published medical literature in favor of his own biased opinions pertaining to vaccine causation," (2)

---

[3] The government also argues that petitioner failed to produce any objective evidence that Gardasil, rather than some other underlying condition or injury, caused S.F.'s symptoms or that S.F. "suffered from any of the injuries alleged in the petition." Resp't's Rev. Resp. at 15-18. According to the government, these are alternative bases for upholding the Chief Special Master's denial.

reassigning himself all pending Gardasil cases, and (3) punishing Gardasil victims and their counsel for opting out of the Vaccine Program by denying or withholding a decision on Gardasil MDL petitioners' motions for attorneys' fees.  Pet'r's Disqualification Mot. at 2-3, 7-10.

      As evidence of bias, petitioner cites various statements by the Chief Special Master, such as statements that "the current situation involving [petitioner's] attorney is untenable," that the Gardasil MDL petitioners are opting out of the Vaccine Program as part of a "scheme" or "plan" to pass through the Program "en route to the promised land," and that he is "*not compelled by the [Vaccine] Act to turn a blind eye to this stratagem*."  Pet'r's Disqualification Reply at 2 (quoting, and adding emphasis to *Atjian*, 2022 WL 17587757, at *13).  Petitioners contend these statements demonstrate the Chief Special Master's actual bias toward Gardasil MDL petitioners or, alternatively, create the objective appearance of such bias.  *Id.* at 2, 8.

      The government responds that petitioner's allegations of bias are "wholly unfounded" and that the Chief Special Master's decisions in Gardasil cases properly apply the Vaccine Rules and relevant statutes and precedent.  Resp't's Disqualification Resp. at 1.  According to the government, the Chief Special Master's skepticism about Gardasil claims, expressed in prior decisions, reflects "his awareness of the evidence and arguments made by petitioners and his reasoned assessment of that evidence, and not on any bias against petitioners or their counsel." *Id.* at 5.  The government supports this contention by surveying eleven cases involving the dismissal of Gardasil petitions: four in which the Chief Special Master dismissed the petition and no appeal was taken, four in which the Chief Special Master's dismissal was appealed and affirmed—each time by a different judge on this court—and three in which another special master has dismissed the petition on the same grounds as those identified in the Chief Special Master's dismissals.  *Id.* at 2-5.  The government also defends the Chief Special Master's procedural handling of Gardasil petitions, maintaining he treated Gardasil MDL petitioners like all others in the program and faithfully applied the exhaustion and opt-out procedures implemented by the Vaccine Act and the Vaccine Rules.  *Id*. at 6-8.

      Petitioner has failed to carry the heavy burden of establishing that a reasonable person familiar with the facts would question the Chief Special Master's impartiality.  The Chief Special Master's statements constitute reasoned judicial rulings, routine case management decisions, and ordinary admonishments to counsel.

      According to petitioner, the Chief Special Master's *Atjian* opinion contributes to the appearance of partiality:

> [E]ven if petitioners may legitimately pass through the Program en route to the 'promised land' of another forum in which they hope to receive a favorable determination, I am not compelled by the Act to turn a blind eye to this stratagem — especially since it is highly likely (if not a certainty) that this claim, as well as the other comparable claims being dismissed, would have resulted in an unfavorable determination *had it been litigated fully in the Vaccine Program* . . . . Because of the above . . . I will rely on my authority to make reasonable percentage reductions in fees in appropriate cases.

*Atjian*, 2022 WL 17587757, at *13.  But this language merely describes the *Atjian* petitioner's choice to forego relief under the Act in favor of joining the multidistrict litigation and the Chief Special Master's decision to take this choice and the strength of petitioner's claim into account in determining a proper attorneys' fee award.  As the Federal Circuit has recognized, special masters are "entitled to use their prior experience in reviewing fee applications" and their determinations "are entitled to deference."  *Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).  The Chief Special Master's assessment of the *Atjian* petitioner's, as well as other comparable claimants', likelihood of success is permissibly based on his experience as a special master and review of the record in *Atjian* and comparable cases.  Next, the Chief Special Master's use of the word "stratagem" to describe the litigation strategy adopted by petitioner's counsel is at most a permissible admonishment to petitioner's counsel considering Congress established the Vaccine Program as the preferred forum for resolving vaccine-injury claims.

Petitioner also criticizes statements the Chief Special Master made in pre-filing communications with her counsel regarding how to manage the numerous Gardasil MDL petitions:

> The Court does not endorse this use of the Program . . . .  Nevertheless, the Chief is cognizant of the fact that the Act requires petitioners . . . first to file in the Program — and that it also permits the same petitioners to exit the Program at various points in the litigation, and then pursue their claim elsewhere.  We will thus abide by the Act's requirements on these matters . . . .

> [T]he Chief wanted to make very clear that requests for fees and costs in these matters will be reviewed in light of the present circumstances.  We will not expect, for example, that cases filed simply to check off the "Vaccine Program" box will require significant attorney time.

Pet'r's Disqualification Mot. Ex. B, at 4.  The Chief Special Master's statements do not create the objective appearance of bias.  Instead, he merely accepts that he is obligated to faithfully apply the Act and recognizes that the petitioner's litigation strategy, while permitted, obviates the Act's overall purpose.  Indeed, the Act established the Vaccine Program to encourage the resolution of vaccine injury claims in a forum that provides benefits to all parties involved.  The strategy adopted by petitioner's counsel tends to hinder the efficient resolution of vaccine injury claims, increase uncertainty for all parties, and destabilize the vaccine market.  In short, the Act's effectiveness would be undercut if too many petitioners availed themselves of this option.  In the quoted correspondence, the Chief Special Master commits to applying the Act faithfully and reserves the right to exercise the discretion the Act affords him in adjudicating Gardasil petitions and associated fees motions.  These statements do not create the appearance of bias.

Petitioner further relies on statements the Chief Special Master made in an order staying proceedings involving Gardasil petitions pending before him:

> "[I]n three recent" cases . . . counsel has filed motions for review *and* asked for my 'disqualification' to resolve them . . . .   These three cases are currently on

10

review before *three different judges* at the Court of Federal Claims — making it exceedingly likely that inconsistent adjudications of the underlying question will occur. And since then, more than 55 additional motions to disqualify me as special master on the same grounds have been filed in other [pre-assignment review] cases — even *before* a fees request has been interposed. The current situation involving this attorney is untenable.

Pet'r's Disqualification Reply Ex. A, at 2. The Chief Special Master's statement that this situation is "untenable" reflects his concern regarding the risk of inconsistent judgments and provides justification for his decision to address this risk by entering a stay. This statement, like the others, does not create the objective appearance of bias.

Ultimately, the Chief Special Master's decision to reject counsel's proposed special procedures and to enter a stay both implement permissible case management choices meant to address the numerous Gardasil cases filed within the past few years. Special masters enjoy broad case management authority. *See* Vaccine Rule 1(b) (allowing the special master to "regulate [an] applicable practice" not specifically addressed by the rules, "consistent with these rules and with the purpose of the Vaccine Act, to decide the case promptly and efficiently"). After rejecting petitioner's counsel's proposal the Chief Special Master enforced the Vaccine Rule's standard procedures. Neither the decisions themselves nor the language the Chief Special Master used to communicate them create the objective appearance of bias.

Finally, petitioner's counsel avers that "*the Chief Special Master has withheld ruling on pending attorney's fees application[s] in over one hundred Gardasil cases,*" some of which "*have been pending for nearly two years.*" Pet'r's Disqualification Reply at 3. But, aside from the arguments addressed above, petitioner provides no evidence that the Chief Special Master's decision to defer ruling on pending fees motions constitutes an effort to punish Gardasil MDL petitioners or Ms. Fetters' counsel. Indeed, there are other explanations for this delay, including the general backlog of vaccine petitions and, more specifically, the number of fee requests pending before the Chief Special Master.[4] The Chief Special Master is entrusted with discretion to manage

---

[4] Petitioner challenges this explanation on the grounds that "claims in the Vaccine Program were down in 2022 by *50%*, and were at their lowest level since 2015." Pet'r's Disqualification Mot. at 3 n.2. What petitioner's argument misses, however, is that the number of petitions filed each year is only one of many factors contributing to a special master's docket. In fiscal year 2020, 1,192 petitions were filed, but only 928 were resolved. Health Res. & Servs. Admin., *National Vaccine Injury Compensation Program Monthly Statistics Report* at 6-7 (February 1, 2023) (available at https://www.hrsa.gov/sites/default/files/hrsa/vicp/vicp-stats-02-01-23.pdf). In fiscal year 2021, 2,057 petitions were filed and 1,013 were resolved, and in 2022, 1,029 were filed and 1,194 were resolved. *Id.* These figures indicate that resolving these petitions takes time. Indeed, the report petitioner relies upon specifically states that "[o]n average, it takes 2 to 3 years to adjudicate a petition after it is filed." *Id.* at 7. Petitioner's comparison also ignores that the number of cases filed in fiscal year 2021 was unusually high and that the figures report court-wide statistics rather than judge-specific caseloads. And this document does not report statistics on fee motions pending before the court, which may also contribute to delays. *See id.* at 2-3, 5. The Chief Special Master gives a better picture of his case

his own docket and has no statutory obligation to resolve fees motions within a prescribed time period.

Accordingly, petitioner has failed to overcome the presumption that the Chief Special Master is impartial. The decisions and language petitioner criticizes display not bias but permissible judgments, docket management practices, and admonishments to counsel.

## CONCLUSION

For the reasons stated, the petitioner's motion for review of the Chief Special Master's denial of attorneys' fees and motion to disqualify the Chief Special Master are DENIED. The Chief Special Master's decision denying petitioner's motion for attorneys' fees is AFFIRMED. The Clerk of Court is directed to enter judgment consistent with this opinion.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

load in the scheduling order in which he states he has over 100 cases involving Gardasil MDL petitioners, many of which involve fee motions. Pet'r's Disqualification Mot. Ex. A, at 1-2. With this context, petitioner has failed to establish that any delay in resolving pending fee motions supports her allegation that the Chief Special Master is biased.